## MARR vs. LARTIGUE.

On the 25th of February, the plaintiff attached a debt due to the defendant, who, on the 28th of the same month, made a *cessio bonorum*, and obtained a stay of proceedings. On the 7th of March, the syndics of the defendant moved to have the attachment dissolved.

An attachment gives no lien, in case of insolvency.

*Livingston* for the plaintiff. This cannot be done. The attachment has created a lien, which the defendant cannot, by any act of his, dissolve or impair. His syndics cannot have acquired, by the cession, more than the ceding debtor possessed.

Our attachment is like the *prætorium pignus* of the civil law : *quod a judicibus datur et prætorium nuncupatur. Cod. lib.* 8, *tit.* 22, *l.* 2. *Veteris, &c.*

It is true, by the Roman law, the creditor was put in possession, and by our process of attachment the goods remain in the sheriff's hands. But it seems immaterial, on the merits, whether a party be put in possession, or the sheriff for him. Neither was the possession, in every case, given to the plaintiff, at Rome. Sometimes it remained with the *executor judicii*.

Let us inquire into the nature and effects of the *pignus*, according to the Roman law.

*Prætorium dicitur*, because taken by virtue of the prætorian law. *Loco citato n.* 1.

M

FALL 1811.       I⊤ was *in securitatem crediti.* 1. *Huberus* 358.
First district.   2 *Struvius* 3. *Necessarium, prætorium vel legale,*
                  *Prætorium, vel ex causâ judicatâ* or *ex prætorio*
MARR             *jussû.* *Id.* 6, *n.* 9. *Ante litém contestatam ser-*
vs.              *vandi causâ cautionem.* *Id.* By the decree
LARTIGUE.        of the prætor, on summary proof, danger shewn,
                 and reason why this mode of proceeding should
                 be resorted to.

So our process of attachment, by the act of 1805, ch. 26.

EVERY nation regulates the *mode* by which relief is to be obtained in her tribunals. Our legislature has pointed *that* to us, in cases of attachment; leaving the *effect* to be regulated by pre-existing laws.

THIS process is a *means* of obtaining *security* for the debt; not a *mode* only of giving jurisdiction to the court: a proceeding *in rem,* a means of securing and preventing its being diverted, so as to defeat the plaintiff's claim.

OUR legislature has pointed the two modes, by which the lien acquired, by the attaching creditor, on the goods seized, may be dissolved—disproving the facts alledged to obtain it—giving security to pay the debt. 1805, c. 26.

IF giving jurisdiction to the court was the only object, property of the least value would suffice; and after plea, the end being obtained, the proper-

ty should be restored. But the act expressly re-
quires goods to be taken, to the amount of the debt and costs ; and if the fact advanced be not denied, that the goods be kept till there be security to pay.

THE Spanish law has a provision still more favourable to the creditor. " If any one, &c. any " creditor may take the debtor's goods, if there be " no judge, and retain them till he be paid, *with-* " *out being obliged to divide* with the other credi- " tors."· 5 *Partida l.* 15. It is true this relates only to the case of a creditor seizing goods, which the debtor is carrying away in his flight. Why may we not extend, in the *spirit* of this law, the *effect* of ours, so as to give a preference to an industrious creditor, the object being equally obtained by taking any *other* property ?

HERE, the property attached was *incorporeal,* not tangible. It, therefore, accompanied the party, the property or right always residing in him wherever he went.

THE priviledge is given to the attaching creditor as a reward for his securing so much property from the debtor running away. Had the present plaintiff followed the debtor, he could not have *taken* the property attached ; all that could be done to secure, was to *attach,* it. By his diligence the object has been attained, the property secured for the plaintiff, and the balance, after paying him, for

FALL 1811.
First district.

MARR
*vs.*
LARTIGUE.

the other creditors. He is therefore fairly entitled to a preference.

SUCH is the opinion of *Febrero, lib.* 3, *ch.* 3, *sec.* 2, *n.* 96. See also *Curia Phillipica.*

BEFORE the creditors at large be put in possession, those who acquired prior rights must be satisfied. *Dig. l.* 42, *tit.* 8, *l.* 6, *s.* 6. *Apud Labeonem scriptum est. Id. lib.* 10, *s.* 16. *Si debitorem meum.*

*Labeo* says : he who receives his own, does not take in fraud, for he takes nothing but what belongs to him. The words *quæ in fraudem creditorum facta sunt*, relate only to contracts, and surely cannot affect cases, in which possession or a pledge was obtained by a judge's order.

I HAVE thus shewn that the *prætorium pignus* vested a *right*, and was something more than a mere *process* to give jurisdiction. I conclude that our attachment has the same effect. The principles of the Roman and Spanish laws remaining in full vigour, unimpaired, and perhaps strengthened by our attachment law.

THE *means* shews the nature of the *end*. The goods are not released after a *plea*, or even *bail*. The defendant, if he do not deny the suggestions of the plaintiff, cannot recover his property, without giving security *to pay*.

*Mazureau* for the syndics. All the proposi- tions, advanced by the plaintiff's counsel, are perfectly correct, when the property of the debtor suffices to pay all his creditors.

BUT, when the failure is open by the debtor's flight, a guarnished creditor must bring into hotchpot, what he was allowed to attach for the benefit of all the creditors, not for his own only.

THERE is no difference, in this case, in the Roman law, that of Spain and ours—the similitude is almost perfect between the *prætorium pignus*, the *prætorian prenda*, and our process of attachment.

A THIRD mode of hypotecation, is the *prætorian (prenda)* when the judge, in case of contumace or default of the defendant, puts his goods in the possession of the plaintiff. *Curia Phillipica* 361, *n.* 3, 4 *Febrero* 44, *n.* 56, in the *assentamiento*, or putting in possession.

*Rebeldes* ought not to be in a better situation than those who appear : the proceedings in case of *rebeldia*, are to be the same as in case of contestation.

IF the plaintiff ask to be put in possession, the judge shall grant it. If the suit be for real property, possession shall be given till the *rebeldia* be purged. If the suit be for damages or for personal property, goods to the amount of the debt shall be given to the plaintiff, or real property. 1 *Re-*

FALL 1811.
First district.

MARR
*vs.*
LARTIGUE.

*cop. de Castilla,* 587, *tit.* 11, *l.* 1. 3 *Partida l.* 1, *tit.* 8.

ONE of the modes of proceeding against debtors, says *Villadiego,* is *por via de assentamiento,* by putting the plaintiff in possession, and requiring the defendant to constitute a known attorney in his stead. If he do not appear, the plaintiff demands a sale. If he appear, he is required, before the property be restored to him, to give *fianzas de estar in derecho,* and *judicatum solvi. Villadiego* 23, *n.* 57.

IF an appearance and plea entitled him to the liberation of the property, he would come in, take it away, and waste it. But the provision, in this respect, is merely to prevent the debtor's fraud— not to allow the plaintiff to pounce on his property, and entirely to exclude the other creditors.

THE *prenda,* however, differs in its effects from our attachment. Like the Roman *pignus,* it is an interlocutory judgment, and puts the plaintiff into actual possession; while the attachment authorises the sheriff to seize the goods only, without allowing the plaintiff to touch them.

IN case of insolvency, neither gives any lien or preference.

IN France, the *saisie-arrêt,* which is the corresponding process, is not more favourable to the plaintiff. The goods seized fall into a hotchpot,

if the debtor be unable to pay all his creditors. <span>FALL 1811.</span> Contribution takes place between all the creditors <span>First district.</span> in case of insolvency. 3 *Jurisp. Encycl.* 302, *Verbo Contribution.* The seizing creditor is preferred, except in case of insolvency. 7 *id.* 507. *Verbo Saisissant.* The diligence of a chirographary creditor avails him : but in case of insolvency, he saves the property from dilapidation only. 16 *Repert. de Jurisp.* 406, 411, 412. A pawnee is preferred, but not a seizing creditor, in case of insolvency. 1 *Domat*, 326, *lib. 4, sect.* 2. Citing 2 *Coutume de Paris, art.* 178, *p.* 1348 *in textu.* The industry of the seizing creditor does not avail him to the exclusion of others, if the debtor prove insolvent : his goods must be divided. *Ferriere.*

MARR
*vs.*
LARTIGUE.

THE prætor puts in possession, not only the attaching creditors, but all others. *Cada uno por su orden.* 16 *Rodriguez's Digest*, 245. Contribution, *a prorata :* one creditor may seize the goods, but he must account to the others. The condition of the occupant is sometimes like that of the rest. *Id.*

THE *prenda* has no greater effect than the *saisie-arrêt.*

THERE is a difference between the *prætorian* and the *judicial prenda.* The first puts the plaintiff in possession for all the creditors. Otherwise

FALL 1811.   the *judicial.   Cur. Phil.* 364, *n.* 37,  2 *Febrero,*
First district.   44, 45,  *art.*  56.

MARR
*vs.*
LARTIGUE.

THE judge orders the plaintiff in possession, on default, or *por juicio*—*pignus judiciale.* 5 *Partida l.* 1, *tit.* 12, *Greg. Lopez's Comm.* He, whom the prætor allows to take hold, does not do it for himself alone; the order of creditors is not thereby deranged. All *ex ordine.*

THE only case, in which the seizing creditor is preferred, is where he takes hold of property which the debtor is flying with. For then, it clearly appears that it is only by his industry and labour, that this is saved. Therefore the 5 *Partida, tit.* 15, *l.* 10, gives a priviledge to the creditor who actually takes the property, which the debtor is carrying away, in his flight.

THE plaintiff, in this case, did not arrest the defendant, neither did he go after him, neither did he seize any thing that he was carrying away. *Tomar lo que llevava ; creditor retardara el con todo que llevava con sigo.*

A CREDITOR, who arrests his debtor who is running away, acquires no lien, no priviledge on any property left behind.

IT is correct to say, as a general principle, that a creditor may retain his own, when he acquires it without fraud :  But, in case of insolvency,

exceptions have been made, in every commercial country, and an equal distribution is to be made.

*Livingston*, in reply. The *prætorium pignus* was, at Rome, a mode of obtaining security for a debt, at the inception of a suit; and although the process may have been variously modified, by different nations, in most, and in this in particular, it gives a pledge or lien.

In France, the effect of a *saisie-arrêt* is determined by express and positive laws; and the writers of that nation, to whom the counsel of the syndics has had recourse, give an account of the effect of the law of their own country.

*Domat*, who may emphatically be stiled a writer on the Roman law, who invariably quotes it, when he derives his principles from it; and the main object of whose work was perhaps to shew the discrepancies between the French and Roman laws, says; it is so determined in a number of *coutumes*, citing that of Paris. We must, therefore, conclude that he did not ground his opinion on any maxim of the Roman law.

It does not appear that the principle, contended for, was in vigour in any of the French provinces *de droit écrit*, in which the Roman law more eminently prevailed.

N

FALL 1811.
First district.

MARR
vs.
LARTIGUE.

*Villadiego*, cited by the counsel of the syndics, states that the *prætorian prenda* is not dissolved, without giving security. *Feb* and the author of *Curia Phillipica*, think there is no *prelacion* preference, and refer to the Digest. The court will make their own conclusions. *Febrero*'s writings are esteemed as affording a good practical work, but of no great authority on doctrinal points.

WHATEVER may be the construction, given to the effect of the *prenda* and *saisie-arrêt* in Spain and France, I have shewn that the *prætorium pignus*, at Rome, gave a lien to the plaintiff; and the act of our legislature supports me in saying that our process of attachment must have the same effect here ; for the property is to remain in the sheriff's hands, when the allegations of the plaintiff are not disproved, till security to pay the debt be given, 1805, *ch.* 26 : and another act recognises the lien created by attachments. All liens by judgment or attachment, to continue. 1805, *ch.* 29.

*By the Court.* Admitting that, as the counsel for the plaintiff contends, the *prætorium pignus* gave to the plaintiff a lien, which enabled him to repel the rest of the defendant's creditors ; as this mode of relief, or the corresponding process, has originally come to us from the French or Spanish

law, it follows, if our statute provides only a *mode* of relief, leaving the *effect* of the process to be ascertained by the existing laws, as neither *prenda* nor the *saisie arrêt*, entitled the plaintiff to the strong lien which is now claimed, the court must say that the property attached must be considered as part of the general fund, from which all the creditors are to be paid.

Such was, however, the law at Rome. The *prætorium pignus* did not avail to the creditor, so as to enable him to exclude his co-creditors. *Nec sibi quiquam adquirit cui prætor permittit: sed aliquid ex ordine facit, et ideo* COETERIS QUOQUE PRODEST. Dig. l. 42, tit. 5, l. 12, and in note 54. UNO *creditorum misso,* OMNES *alii creditores missi intelliguntur.*

By our act of assembly the goods are not to be withheld from the defendant, till he gives security *to pay the debt,* but *to defend such suit and abide the judgment of the court.* Such a security, says *Villadiego,* is required in the tribunals of Spain, upon the *prætorian prenda: fianzas de estar in derecho et judicatum solvi.*

In the present case, had the defendant relieved himself from the seizure, he would have given security to defend the suit, and abide the judgment of the court. Could the penalty of the bond have been recovered, when afterwards, and before

FALL 1811.  judgment, the proceedings were staid, so that no
First district.  judgment could be obtained, and the debt became
MARR  by law, or the consent of the majority of the cre-
*vs.*  ditors, reduced in its amount, and payable out of
LARTIGUE.  a certain fund only ?

ATTACHMENT DISSOLVED.