Martin, J.
delivered the opinion of the court. This case comes before us on the appeal of John Day from the decision of the judge a quo in dismissing his opposition to the homologation of the tableau of distribution, made by syndics. As by his opposition this creditor contests the claims of the other creditors it becomes necessary to examine them all.
1. The parish court was certainly correct in allowing Packwood, the insolvent’s landlord a privilege on the goods, which the latter had seized to secure the rent due. Civ. Code, 468, art. 74.
2. Madame Papet’s claim was rightfully repelled, as she suffered more than a fortnight *65 (the legal time) to elapse, after the furniture was removed from her house, id.
3. Ogden’s heirs were properly allowed a privilege for the goods, in their store occupied by the insolvent, at the time of his failure.
4. Levy and Thomas were justly placed as ordinary creditors for the amount of the judgment, and as privileged ones for the costs, as their judgment was not registered. 1 Martin's Digest, 702.
5. Kirk & Mercein’s claim does not appear to have been contested.
6. The attachment sued out by Ronaldson cannot avail him. We think with the superior of the late territory, that an attachment gives no lien in case of the defendant’s failure. Marr vs. Lartigue, 2 Martin, 89.
7. The judge a quo was correct in concluding that the judgment of Gilbert Russel & Co. not having been registered, did not give them a privilege.
8. He did not err in denying a privilege to Lefort, who, in this respect, was in the same situation as the preceding creditor. The fi. fa. did not place Lefort in a better situation; for having countermanded the execution of it, and having forbore on its return to keep it *66 alive by issuing an alias, he cannot claim, any advantage under it.
9. Duffy’s situation does not materially differ from that of Lefort. The only difference is that the former did not countermand the execution of his fi. fas. But they were neither executed nor followed up by alias'.
10. Day’s claim is resisted on the ground that there is no judgment against Hanna, and if there be it is void, and that the docketing of the judgment creates no lien; that it was not recorded, and if it was it creates no lien neither does the fi. fa.
I. It is true there was no original suit instituted by Day against Hanna; but in a suit brought by the former against Eeastburn & al. the latter was summoned and interrogated as a garnishee, and on his oath admitted he owed a certain sum to the defendants, which on the plaintiff recovering judgment he, Hanna, was directed to pay, as part of the sum recovered from the original defendants. Now a garnishee is a party to a suit: when he admits or it is proved, contradictorily with him, that he owes or has effects belonging to the said defendant, and when he is by the court directed to pay, the judgment is as com *67 plete against him as against the said defendant. There cannot be any doubt that, if he be ordered to pay what he does not owe, he may appeal.
II. Hanna did not confess judgment. A confession of judgment is essentially a voluntary act. He did what he was compelled to do, and his compliance with the law, in declaring the truth, granted nothing which it was in his power to have withholden.
He had not at the time failed. Now, if his creditors considered it needless to apply for a suspension of legal proceedings against him, such proceedings might well, be continued or commenced against him; and if, before the suspension, they matured into a judgment, we do not see that the creditor can be deprived of the legal consequences of his diligence.
III. We think that the recording, not the docketing of the judgment, creates the lien.
IV. It is certainly true that the contents of an act, in the possession of an officer, while it exists, cannot be proven otherwise than by the production of the original, or his giving a copy of it. He cannot attest its contents or *68 ally, nor by his certificate. A recorder of mortgages, who has recorded a judgment cannot certify its contents, nor perhaps its existence; but he may certify that there is no record of any judgment or mortgage. Indeed, that is the way in which notaries now ascertain the absence of liens; and when the recorder certifies that there is no lien but such and such mortgages, he by a negative pregnant, certifies that such mortgages are registered in his books. He might transcribe all the entries in his book against the property of an individual, and attest that this is all that is against him; but the practice, which is sanctioned by long usage, is to certify that such and such mortgages are registered. We think this suffices without giving a formal transcript of the entries on his books, which could not be more satisfactory. We conclude that the certificate of the recorder of mortgages, shews, in this case, that Day’s judgment was recorded.
The effect of the registry of a judgment against a garnishee, who is decreed to pay a sum of money, must have the like consequences as that of a judgment against a party called on to warrant or defend.
*69 The registry, in this case, took place before any stay of proceedings granted.
V. Leges vigilantibus, non dormientibus serviunt. The creditors of the insolvent, who laid by, and forbore to exercise their respective rights individually or collectively, cannot defeat the right of him who, while legal proceedings were unstayed, began and continued his, unaided by the common debtor.
It appears to us the parish judge erred in refusing the opposition of this creditor.
It is therefore ordered, adjudged, and decreed, that the judgment of the parish court, as far as it relates to the creditors, Packwood, Papet, Ogden’s heirs, Levy & Thomas, Kirk & Mecein, Ronaldson, Gilbert Russell & Co., Lefort, and Duffy, be affirmed; but as far as it relates to the opposition of John Day, be annulled, avoided, and reversed; and this court proceeding to render such a judgment, as might herein to have been given in the parish court,
It is ordered, adjudged and decreed, that John Day be placed on the tableau of distribution for the amount of his judgment against the insolvent, as a privileged creditor on the land and slaves, from the 7th of June, 1820; *70 on the personal estate from the 8th of August, following; and that the syndics and appellees pay costs on this application in both courts.